IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAGHAVAN SATHIANATHAN,<br><br>  Plaintiff,<br><br>  v.<br><br>SMITH BARNEY, INC.,<br><br>  Defendant. | No. C 04-2130 SBA<br><br>**ORDER** |

This matter comes before the Court on Defendant's Motion to Dismiss and Plaintiff's Motion for Leave to Amend. Having read and considered the arguments presented by the parties in their moving papers, the Court finds this matter appropriate for disposition without a hearing. The Court HEREBY GRANTS Defendant's Motion to Dismiss and GRANTS Plaintiff leave to amend.

## **BACKGROUND**

Plaintiff was employed by Smith Barney from August 1998 until February 2001, when he voluntarily resigned to join Morgan Stanley. From May 2000 until February 2001, Plaintiff, as a Smith Barney financial consultant, serviced the Smith Barney brokerage account of Mr. Anjan Venkatramani, who transferred his account to Morgan Stanley when Plaintiff voluntarily left Smith Barney.

An arbitration between Plaintiff and Defendant arose out of Plaintiff's belief that he was damaged as a result of the defense and resolution of an underlying arbitration claim entitled *Anjan Venkatramani v. Solomon Smith Barney, Inc., Raghavan Sathianathan, Steven Torrico and Morgan Stanley Dean Witter*, brought before the Pacific Exchange Arbitration forum ("the Venkatramani Action"). The Venkatramani Action was based upon the handling of Mr. Venkatramani's brokerage account.

Plaintiff claimed he was entitled to millions of dollars due to Smith Barney's defense and ultimate

settlement with Venkatramani. Plaintiff filed a Cross-Claim against Smith Barney, Steven Torrico, Morgan Stanley, and Venkatramani. In response, Smith Barney filed a Counterclaim against Plaintiff for indemnification and contribution as a result of the settlement of the Venkatramani Action. The Sathianathan Claim sought $18 million in damages from Smith Barney and $270 million in punitive damages.

On March 22, 2004, at the conclusion of Plaintiff's presentation of evidence, (which took place over ten different days) the Panel heard argument on Smith Barney's Motion to Dismiss. The parties presented oral argument, and Smith Barney submitted its Counterclaim to the Panel without further evidentiary presentation.

After the hearing on the Motion to Dismiss and the Plaintiff's opposition to the Motion, the Panel deliberated. Thereafter, they advised the Parties of their unanimous decision, by reading the Award to all parties simultaneously. All of Plaintiff's claims against Smith Barney were dismissed. Smith Barney was awarded $10,000 on its Counterclaim against Plaintiff.

**Procedural History:**

On May 28, 2004, Plaintiff filed his "Complaint and Motion to Vacate Arbitration Award." The motion, however, was not noticed, and was therefore not properly before the Court. Defendant filed a Motion to Dismiss, or in the Alternative, to Confirm Arbitration Award on July 27, 2004, and noticed the hearing for October 26, 2004. On August 13, 2004, Plaintiff filed a Declaration "in Support of Complaint/Motion to Vacate and in Opposition to Motion to Confirm." On August 20, 2004, Plaintiff filed a 51-page Amended Brief in Support of Complaint/Motion to Vacate Arbitration Award and in Opposition to Motion to Confirm. On September 30, 2004, Defendant filed its Reply Brief in Support of its Motion to Dismiss, or in the Alternative, Motion to Confirm Arbitration Award. On October 4, 2004, Defendant moved ex parte to continue hearing on Defendant's Motion to Dismiss, or in the alternative, Motion to Confirm. Plaintiff thereafter filed a First Amended Complaint ("FAC") on October 15, 2004.

On October 19, 2004, the Court issued an Order denying without prejudice Defendant's Motion to Dismiss, and denied Defendant's *ex parte* request to continue hearing on Defendant's Motion to Confirm. On October 25, 2004, the Court ordered the parties to provide supplemental briefing on the

2

1  issue of whether the Court had jurisdiction over the instant action, and took Defendant's Motion to Confirm
2  under submission.
3        On December 17, 2004, the Court issued an order striking Plaintiff's August 13, 2004 declaration
4  and his 51-page Amended Brief in Support of Complaint/Motion to Vacate Arbitration Award and in
5  Opposition to Motion to Confirm.  The Court ordered Plaintiff to file a new Opposition, and ordered
6  Defendant to file a new Reply.  The Court set the matter for hearing on February 15, 2005.
7        On February 25, 2005, the Court granted Defendant's Motion to Confirm the Arbitration Award,
8  and denied Plaintiff's Motion to Vacate.  The Court also struck Plaintiff's Motion for Leave to Amend for
9  failure to include a memorandum of points and authorities, as required by N.D. Civ. L.R. 7-4.  On April
10 20, 2005, Plaintiff filed an ex parte motion to stay the instant action pending his appeal of the Court's
11 granting of the Motion to Confirm the arbitration award and denial of Plaintiff's Motion to Vacate.  On May
12 3, 2005, the Court denied Plaintiff's ex parte request.  On May 19, 2005, the Ninth Circuit Court of
13 Appeals dismissed Plaintiff's appeal for lack of subject matter jurisdiction.

## LEGAL STANDARD

15       A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  *Navarro v. Block*, 250 F.3d 729,
16 731 (9th Cir. 2001).  A motion to dismiss should not be granted "unless it appears beyond doubt that the
17 plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v.
18 Gibson*, 355 U.S. 41, 45-46 (1957); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).  The
19 complaint is construed in a light most favorable to the plaintiff and all properly pled factual allegations are
20 taken as true.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American
21 Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  However, this Court is "not required to accept as
22 true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman
23 v. Hart Brewing, Inc*., 143 F.3d 1293, 1295-96 (9th Cir. 1998).  Further, this Court need not
24 "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual
25 allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Although a court is
26 generally confined to the allegations in the pleadings on a motion to dismiss, a court may also consider

material which is properly submitted as part of the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *see also Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994).

Leave to amend a complaint "should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court can consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). Leave to amend is properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992).

## **DISCUSSION**

### I.  Motion to Dismiss

Defendant argues that Plaintiff's Complaint should be dismissed because: (1) the law of the case doctrine, collateral estoppel, and res judicata bar Plaintiff's claims; and (2) because the FAC fails to state a claim upon which relief can be granted.

### A.  Law of the Case, Collateral Estoppel, and Res Judicata

#### 1.  Law of the Case

"Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." Wright & Miller, *Federal Practice and Procedure*, § 4478; (citing *Suel v. Secretary of H.& H.S.*, 192 F.3d 981, 984-985 (Fed. Cir. 1999) (law of the case doctrine "operates to protect the settled expectations of the parties and promote orderly development of the case"). "Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir., 1990) (citing *Richardson v. United States*, 841 F.2d

4

993, 996 (9th Cir.), amended, 860 F.2d 357 (9th Cir. 1988)). "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" (*Id.*) (quoting *Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982)).

Defendant asserts that the law of the case doctrine applies and that the FAC should be dismissed because the only relief Plaintiff seeks is vacation of the arbitration award, relief that the Court has already denied. (Motion to Dismiss, 3.) Indeed, in the February 25, 2005 Order, the Court confirmed the arbitration award and denied Plaintiff's request to vacate the same. In addition, Plaintiff has already appealed the confirmation of the arbitration award. However, while most of the FAC is devoted to allegations regarding his motion to vacate, Plaintiff does include causes of action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and for racial discrimination under 42 U.S.C. §1981 and 42 U.S.C. § 1985, along with a request for compensatory and punitive damages related thereto. Accordingly, while the law of the case applies to the FAC to the extent that Plaintiff seeks vacation of the arbitration award, it does not preclude the remainder of the claims raised in the FAC.

### 2. Collateral Estoppel (issue preclusion)

"To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and [] necessary part of the judgment in the earlier action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). An arbitration award can provide issue preclusive or claim preclusive effect:

> In applying res judicata and collateral estoppel to an arbitration proceeding, we make an examination of the record, if one exists, including any findings of the arbitrators. . . . We must decide whether a rational factfinder could have reached a conclusion based upon an issue other than that which the defendant seeks to foreclose. . . . When the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered foreclosed, even if no explicit finding of that issue has been made.

*Id*. at 1321 (citations omitted). However, "[i]t is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated." *Id*. (quoting *United States v. Lasky*, 600 F.2d 765,

5

769 (9th Cir.), cert. denied, 444 U.S. 979, 62 L. Ed. 2d 405, 100 S. Ct. 480 (1979)). Because issue preclusion and res judicata are affirmative defenses, the party asserting them bears the burden of establishing that they apply. *Id*.

Defendant asserts that all of Plaintiff's claims are barred by collateral estoppel because the same issues were litigated in the arbitration. In support of its position, Defendant cites to the arbitration award itself. (Reply to Motion to Dismiss, 5.)[1] However, the arbitration award does not provide a sufficient basis for determining that collateral estoppel applies. The Arbitrators made two findings of fact: (1) that Defendant and Plaintiff shared responsibility for Mr. Venkatramani's damages; and (2) that Defendant paid Mr. Venkatramani $5 million to settle his claims. (Exhibit 3 to FAC, at 4.) The arbitrators then decided that: (1) "[Plaintiff] has not met his burden of proof to show illegal activity, or willful or negligent disregard of [Plaintiff's] rights"; and (2) [Defendant] has not met the burden of proof to show that the Cross-Claimant's claims were frivolous, nor that the fault in causing damages to Mr. Venkatramani lies substantially with [Plaintiff]." (*Id*.) The arbitrators ultimately awarded Defendant $10,000 in contribution from Plaintiff. (*Id*.)

Issue preclusion does not apply here. Although it is its burden, Defendant has failed to demonstrate what "illegal activity" or "rights" of Plaintiff's were adjudicated in the arbitration. While the arbitration award lists the claims Plaintiff raised, those claims do not include any reference to RICO or allege the predicate acts of RICO asserted in the instant action, nor do they assert any racial discrimination under 42 U.S.C. § 1981, § 1985 or otherwise. In addition, other than citing to the arbitration award itself, Defendant has failed to cite to the record before the panel or otherwise "provide a sufficient record of the claims actually litigated." *Clark*, 966 F.2d at 1321. Accordingly, Defendant has failed to demonstrate that the issues at stake are identical to the ones adjudicated in the prior arbitration, and therefore issue preclusion does not apply. *Id.* at 1320.

**3.    Res Judicata (claim preclusion)**

"The doctrine of res judicata provides that a final judgment on the merits bars further claims by

---

[1] The arbitration award is attached as an exhibit to the FAC.

6

parties or their privies based on the same cause of action." *In re Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997) (internal quotation marks omitted). Three conditions must be met for res judicata to apply: (1) an identity of claims, (2) a final judgment on the merits, and (3) identity of or privity between the parties. *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). In determining whether there is an identity of claims, the Court evaluates:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). Although the last factor is the most important, "[n]o single criterion can decide every res judicata question," and this Court should not apply the factors mechanistically. *Id.* Res judicata bars the parties or their privies from litigating issues that were or could have been raised in the earlier action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Here, Defendant has failed to demonstrate that res judicata applies. Defendant has not even attempted to apply the *Constantini* factors to demonstrate an identity of claims.[2] As stated *supra*, the causes of action alleged in the instant case were not alleged in the arbitration, nor were the factual predicates of Plaintiff's RICO and discrimination claims asserted. In any event, even if Defendant could otherwise demonstrate an identity of claims, it has failed to demonstrate that Plaintiff's RICO and discrimination claims could have been raised in the prior arbitration. In his Opposition, Plaintiff asserts that the arbitrators did not allow him to pursue such claims in the arbitration. (Opp. to Motion to Dismiss, 15.) In Reply, Defendant merely refers to the five-page arbitration award itself, which again does not refer to a RICO or discrimination claim. Because Defendant has failed to provide a sufficient record on which the Court can determine if Plaintiff could have raised his RICO and discrimination claims in the arbitration, the Court declines to apply the doctrine of res judicata.[3] *See Clark*, 966 F.2d at 1321.

---

[2] It is undisputed that the arbitration involved the same parties and that, subsequent to confirmation by the Court, it constituted a final judgment on the merits.

[3] Although Plaintiff does not provide the Court with the relevant portion of the arbitration transcript in support of his assertion that his RICO and discrimination claims could not be raised in the arbitration, Plaintiff did not receive the transcript of the arbitration proceedings. (FAC, ¶ 21.) In any event, as discussed above, it is Defendant's burden to demonstrate that res judicata applies.

**B.   Failure to State a Claim**

   **1.   RICO Claim**

To state a RICO claim, Plaintiff must allege four elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Racketeering activity" means any act that violates one of the federal laws specified in the RICO statute. *See* 18 U.S.C. § 1961(1).  The elements of a RICO claim must be plead with particularity pursuant to Federal Rule of Civil Procedure 9(b). *Edwards v. Marin Park, Inc.* 356 F.3d 1058, 1066 (9th Cir. 2004). In order to do so, Plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co.*, 806 F.2d at 1401.

Defendant first asserts that Plaintiff has failed to allege the underlying predicate acts with sufficient particularity. Defendant next argues that Plaintiff has failed to allege an "enterprise" under RICO and has failed to demonstrate a "pattern" of racketeering activity.

   **a.   Racketeering Activity**

The gravamen of Plaintiff's RICO claim is that Defendant and the law firms of Keesal, Young, & Logan and Brassler, Amery & Ross engaged in illegal practices during arbitrations and litigations. (*Id.* at ¶¶ 571-574.)[4] However, the only "racketeering activity" that Plaintiff alleges are wire and mail fraud. (FAC, ¶ 572); *see* 18 U.S.C. § 1961(1) ( mail and wire fraud considered "racketeering activity" under statute).

To properly allege a violation of the mail fraud statute, the FAC must allege with particularity: "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Schreiber Distrib. Co.*, 806 F.2d. at 1400. In order to allege a violation of the wire fraud statute, the FAC must allege with particularity: "(1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Id.*

---

[4] Smith Barney is the only Defendant in this action.

8

The first predicate act that Plaintiff alleges is that David Libowsky, an attorney with Bressler, Amery & Ross, transmitted a perjurious affidavit through the mail on December 27, 1993. (FAC, ¶ 587.) Plaintiff alleges that the affidavit was filed in connection with a case entitled *Mian v. Donaldson, Lufkin & Jenrette*, 1994 WL 494802 (S.D.N.Y.), aff'd 60 F.3d 810 (2d Cir. 1995).[5] Plaintiff, however, fails to allege any specific scheme or artifice to defraud, fails to allege with particularity why the affidavit was fraudulent, and fails to plead any facts indicating an intent to deceive or defraud. (FAC, ¶ 587.) Accordingly, Plaintiff's allegations relating to Libowsky's affidavit in the *Mian* action fail to assert a predicate act under RICO.

Plaintiff also asserts that during the 2002 arbitration of the Venkatramani Action, Brian Amery of Bressler, Amery & Ross sent Plaintiff, through the mail, a representation letter that was fraudulent because it was Amery's intention to defraud Plaintiff out of his valuable confidential information for the benefit of Defendant. (FAC, ¶ 589.) However, Plaintiff fails to provide any specific facts indicating a scheme or an intent to defraud. Plaintiff also alleges that Mr. Amery and his colleague, Jeff Friedman, submitted perjurious affidavits through the mail in September 2002. (*Id.*, ¶¶ 591-94.) Plaintiff, however, fails to allege with particularity why these affidavits were perjurious and fails to allege specific facts indicating a scheme or an intent to defraud.[6] Plaintiff further alleges that Defendant's California-based lawyers, Robert Ericson and Michelle From of Keesal, Young & Logan, through the mail, "knowingly produced a fraudulent document purporting to be the customer's online access for his Smith Barney account." (*Id.* ¶ 595.) Plaintiff asserts that this document is fraudulent because "it does not contain all of the online access for the customer account." (*Id.*) Plaintiff has failed to allege any intent by either Ericson or From to defraud him

---

[5]In *Mian*, the plaintiff complained that background information sought by the defendant in an arbitration proceeding demonstrated racial discrimination. *Mian*, 1994 WL 494802, *3. The district court granted summary judgment because the defendant submitted evidence that the information was sought for a legitimate purpose, and plaintiff failed to set forth facts in support of its conclusory allegations to the contrary. *Id.* at *4. The district court also found that the plaintiff's additional claims for civil rights and RICO violations failed to state a claim upon which relief could be granted, and dismissed those claims with prejudice. *Id.* at *6.

[6]After alleging, in conclusory fashion, that the affidavits were perjurious, Plaintiff confusingly asserts that their perjurious nature does not render them predicate acts. Instead, he asserts that it is the fact that they contain fraudulent misrepresentations. (FAC, ¶ 590.) Plaintiff, however, fails to identify any fraudulent misrepresentations in the affidavits.

and has failed to allege with particularity what information the document lacks and why the absence of such information was fraudulent.[7]

Plaintiff also alleges that during the 2004 arbitration between Plaintiff and Defendant, Friedman produced two different documents purporting to be copies of filings that Smith Barney made to the NASD[8] regarding Plaintiff. Plaintiff fails to allege that Friedman had the intent to defraud and fails to allege with particularity why the documents were fraudulent. (*Id*., ¶ 596.)[9]

### b. Enterprise

"At a minimum, to be an enterprise, an entity must exhibit some sort of structure . . . for the making of decisions, whether it be hierarchical or consensual. . . . The structure should provide some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis." *Chang v. Chen*, 80 F.3d 1293, 1299 (9th Cir. 1996).

Here, Plaintiff alleges that:

> Smith Barney; Keesal Young & Logan; and Bressler, Amery & Ross have a documented history of having worked together for over twenty years and during that time, they have committed their mail fraud and wire fraud and other illegal activities in other arbitrations and litigation and their activities constitute a pattern of racketeering activities which are more than just isolated and sporadic but rather are a part of the usual and customary practices of Smith Barney and its above-mentioned cohorts in response to customer claims in selected circumstances such as when the claim amount is above a certain size (e.g., more than $1 million) or when the customer and/or the stockbroker is not white.

(FAC, ¶ 572.) Plaintiff, however, has failed to allege an "enterprise" with any ascertainable structure. Plaintiff has failed to allege how the group was controlled, how decisions were made, and specifically how they worked together as a group. Accordingly, Plaintiff has failed to sufficiently allege an "enterprise" under RICO.

---

[7]Plaintiff also alleges, in conclusory fashion, that during the 2004 arbitration Defendant produced "a fraudulent third version of the customer's Smith Barney online access." (FAC, ¶ 599.) This allegation also fails to allege the required intent or why the document was fraudulent.

[8]The NASD is the National Association of Securities Dealers, a self-regulating, voluntary association of brokers and dealers in the over-the-counter securities business.

[9]In the FAC, Plaintiff also generally references telephone calls and faxes exchanged between Defendant and its attorneys. (*see, e.g.*, ¶ 593.) Any such general allegations clearly fail to allege fraud with the requisite particularity.

10

### c. Pattern of Activity

A pattern of racketeering activity "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [October 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." *See* 18 U.S.C. § 1961(5). Plaintiff asserts three acts of racketeering activity – a perjurious affidavit submitted in the *Mian* case, fraud in the 2002 Venkatramani Action, and fraud in the 2004 arbitration between Plaintiff and Defendant.

Defendant first asserts that Plaintiff has waived any argument that a pattern existed. Defendant asserts that in an October 20, 2004 letter-brief, Plaintiff stated that he included allegations in support of his RICO claims that spanned a period of several years, despite his intention that the Court "only consider events of the last year." (Plaintiff's October 20, 2004 letter-brief at 10.) Plaintiff also stated that he did not intend the Court to rule on his civil rights claims, but only included them for the Court to "understand the broader framework of this action." (*Id.* at 9.) After receiving Plaintiff's letter-brief, the Court issued an order on October 25, 2004 requiring briefing on whether the Court had subject matter jurisdiction. Plaintiff, who is proceeding *pro se*, stated in response to the Court's order that he actually intended to pursue his civil rights and RICO claims and reasserted the predicate acts alleged in the FAC. [Docket No. 40.][10] Because Plaintiff is proceeding *pro se*, and because he has indicated his intention to pursue his claims, the Court declines to dismiss them based on Plaintiff's October 20, 2004 letter-brief.

Defendant next asserts that even if it were to consider the acts alleged in the FAC, they still fail to show a pattern. Defendant asserts that in addition to the fact that the racketeering activity itself has not been alleged with sufficient particularity, the allegations concerning racketeering in the *Mian* case occurred more than 10 years before the racketeering alleged concerning the 2002 Venkatramani Action. (Motion to Dismiss, 12.) Although Defendant is correct that the pattern of racketeering activity has not been alleged with sufficient particularity for the reasons discussed *supra*, Defendant's second contention lacks merit. Plaintiff has alleged that the perjurious declaration in the *Mian* case were filed on December 27, 1993.

---

[10] The Court ultimately determined that it had jurisdiction based upon diversity of citizenship.

United States District Court
For the Northern District of California

(FAC, ¶ 587.) Plaintiff has alleged that the perjurious declarations relating to the Venkatramani Action were submitted on September 5 and 6, 2002. Thus, although the predicate acts have not been alleged with sufficient particularity, they are alleged to have occurred within 10 years of each other and could demonstrate a "pattern" under RICO.[11]

### d. Conclusion regarding RICO Claim

For the foregoing reasons, the Court finds that Plaintiff has failed to state a RICO violation because he has not alleged the predicate acts of wire fraud and mail fraud, or an enterprise, with sufficient particularity.

### 2. Violations of 42 U.S.C. § 1981 and § 1985

42 U.S.C. § 1981 states, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42. U.S.C. § 1981. In order to state a claim under 42 U.S.C. § 1981, Plaintiff must sufficiently allege intentional discrimination on account of race. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989).

42 U.S.C. § 1985 provides in relevant part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). "An indispensable element of a claim under 42 U.S.C. § 1985(3) is some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) (internal quotation omitted).

In the instant case, Plaintiff has not sufficiently pled that Defendant violated any right protected by §

---

[11]Defendant then argues that the remaining two acts alleged fail to demonstrate the requisite pattern because the FAC does not make clear that they were separate acts. (*See* Motion to Dismiss, 12.) Because this argument is based on Defendant's faulty assertion that actions taken in the *Mian* case cannot be considered in demonstrating a pattern of racketeering activity, these subsequent arguments necessarily fail.

12

1981 or § 1985. Plaintiff's primary contention appears to be that Defendant's settlement with Venkatramani somehow violated his rights. (FAC, ¶¶ 646-47, 650, 653.) Plaintiff apparently asserts that the settlement deprived him of the ability to assert claims against Defendant and that he was somehow forced to give up claims he may have had against Venkatramani. (*Id*., ¶ 647-650.) Plaintiff, however, fails to identify any right protected by § 1981 or § 1985 that was violated by the settlement between Defendant and Venkatramani.

In addition, Plaintiff fails to allege any facts demonstrating racial animus by Defendant.[12] Instead, Plaintiff merely asserts, in conclusory fashion, that he was not afforded the lawyer of his choice because of his race (FAC, ¶ 631); that Defendant refused to offer him a settlement agreement because of his race (*Id*., ¶ 633-34); that Defendant has not treated any other stockbroker the way it has treated him (*Id.,* ¶ 652); that Defendant's lawyers racially discriminated against him because "all thirty of the partners of the 65 lawyer law firm Keesal, Young & Logan are all [sic] white" (*Id.,* ¶ 656); and that Defendant's defense in the arbitration with Plaintiff was "race-based." (*Id*., ¶ 659.) These allegations fail to demonstrate any racial animus by Defendant. Accordingly, Plaintiff's § 1981 and § 1985 claims are dismissed.[13]

## II.  Leave to Amend

Plaintiff sought in his Opposition for Leave to Amend and also moved separately for the same relief. Defendant opposes leave to amend, asserting that any amendment would be futile.[14]

The Court grants Plaintiff leave to amend. Plaintiff has not yet had the benefit of the Court's evaluation of the sufficiency of his claims. The Court, however, instructs Plaintiff that he should **carefully review** the Court's order dismissing the FAC, and **if he can do so in good faith**, allege *facts* that support

---

[12]Plaintiff has asserted that he is a racial minority. (FAC, ¶ 622.)

[13]In his Opposition, Plaintiff asserts a number of additional causes of action that are not raised in the FAC. (Opp. at 22-24.) Defendant suggests that Plaintiff may have simply cut and pasted these arguments from a brief he filed in an action pending in New York. In any event, "[i]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

[14]Defendant also requests judicial notice of the 560 page First Amended Complaint filed by Plaintiff in the Southern District of New York against Smith Barney and others. Defendant, however, does not explain how this document is relevant to its arguments. Accordingly, Defendant's request is denied.

his claims. Any Second Amended Complaint cannot include allegations regarding why the arbitration award should be vacated, but must focus on facts, alleged with particularity, supporting his RICO enterprise and the predicate acts in support of his RICO claim. In addition, Plaintiff is instructed that he must allege facts demonstrating that Defendant had an intent to discriminate and violated rights protected by 42 U.S.C. §§ 1981 and 1985. Plaintiff is cautioned that this may be his final opportunity to amend.[15]

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. Plaintiff is granted leave to file a Second Amended Complaint within 30 days from the date of this Order. **Failure to do so may result in dismissal of the action with prejudice without further notice from the Court**.

IT IS SO ORDERED.

                                                           /s/ Saundra Brown Armstrong

Dated: 6-6-05                          SAUNDRA BROWN ARMSTRONG
                                                        United States District Judge

---

[15] In its Motion to Dismiss, Defendant also asserts that the FAC should be dismissed with prejudice under Fed. R. Civ. P. 41(b) because the 243-page FAC fails to include a short and plain statement of the claims in violation of Fed. R. Civ. P. 8(a) and (e). (Motion to Dismiss, 16.) Defendant relies upon *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981), in which the Ninth Circuit held that a Court had the discretion to dismiss an action with prejudice pursuant to Fed. R. Civ. P. 41(b) for failure to comply with Fed. R. Civ. P. 8. Defendant is correct that the instant case, like *Nevijel*, involves a plaintiff filing a voluminous complaint that fails to provide a short and plain statement of his claims. However, unlike in *Nevijel*, Plaintiff in the instant action is proceeding *pro se*. Accordingly, granting Plaintiff at least one additional opportunity to amend is appropriate.