**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| RAGHAVAN SATHIANATHAN, | No.  C 04-02130 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 257] |
| SMITH BARNEY, INC., *et al.*, | |
| Defendants. | |

**INTRODUCTION**

Before the Court is plaintiff Raghavan Sathianathan's Renewed Rule 60 Motion for Relief from this Court's February 25, 2005 Order (the "Rule 60 Motion") [Docket No. 257]; Defendant Smith Barney's Opposition to Renewed Rule 60 Motion (the "Rule 60 Opposition") [Docket No. 266]; and plaintiff's Reply Brief in Support of Renewed Rule 60 Motion [Docket No. 270].  For the reasons discussed below, the Court DENIES the Motion.

**BACKGROUND**

This matter has a extremely long and convoluted procedural history, dating back to May 28, 2004, both in this Court and in the Ninth Circuit, due in large part to plaintiff's in propria persona status.  *See* Docket No. 1.  For brevity, the Court will only focus on the events relevant to the Motion before the Court.  Plaintiff was a financial consultant employed by defendant Smith Barney from August 1998 through February 2001.  A dispute arose regarding one of the accounts he serviced.  After ten days of oral argument, concluding on March 22, 2004, a panel of three Pacific Stock Exchange ("PCX") arbitrators awarded Smith Barney $10,000 on its counterclaims against plaintiff.  Smith Barney was represented by Keesal, Young & Logan ("KYL").  The arbitrators were (1) Chairperson Harve Eliot Citrin, Esq., (2) Industry Panel Member James Murray, and (3) Public Arbitrator Joseph Berzok, Esq.

On February 25, 2005, this Court granted Smith Barney's Motion to Confirm Arbitration Award [Docket No. 7] (the "Motion to Confirm") and denied plaintiff's Motion to Vacate

1  Arbitration Hearing [Docket No. 36] (the "Motion to Vacate"). *See* Docket No. 92 (the "Order").

2  On December 5, 2005, plaintiff filed a motion under Federal Rule of Civil Procedure 60(b) to vacate

3  the February 25 Order. *See* Docket No. 149. As plaintiff had already appealed the Order, however,

4  the Court had no jurisdiction over his motion. *See* Docket No. 174. On March 21, 2006, at

5  plaintiff's request, the Ninth Circuit remanded his appeal to this Court for the limited purpose of

6  considering his motion. *See* Docket Nos. 191, 193. The Court then set a briefing schedule for

7  plaintiff to file a *renewed* Rule 60 motion. *See* Docket No. 193. A dispute then arose regarding

8  discovery related to the motion, which was referred to a magistrate judge. *See* Docket No. 216.

9  Discovery and related disputes continued through September 2007. *See* Docket No. 249. In March

10  and April 2008, the parties filed the pleadings before the Court.

11  <center>**LEGAL STANDARDS**</center>

12  Plaintiff seeks relief under Federal Rule of Civil Procedure 60(b)(1) through (b)(3) and

13  (b)(6). Rule 60(b) provides:

14  On motion and just terms, the court may relieve a party or its legal

15  representative from a final judgment, order, or proceeding for the following reasons:

16  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered

17  evidence that, with reasonable diligence, could not have been discovered in time to

18  move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic

19  or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any

20  other reason that justifies relief.

21  Fed. R. Civ. P. 60(b); *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007).

22  In addition, a party must move for relief under Rule 60(b) "within a reasonable time--and for reasons

23  (1), (2), and (3) no more than a year after the entry of the judgment . . . ." *Id.* 60(c)(1); *Delay*, 475

24  F.3d at 1044 (quoting predecessor Rule 60(b) sentence 2).

25  <center>**ANALYSIS**</center>

26  **I.     The timing of plaintiff's Rule 60 motion.**

27  Smith Barney did not address whether plaintiff's Rule 60 Motion was timely, in its Rule 60

28  Opposition, thus waiving this argument. *See* Court's Standing Order for Civil Cases ¶ 8 (failure to

<center>2</center>

1    oppose a motion is consent to granting it).

2    **II.      Plaintiff is not entitled to relief under Rule 60(b)(1) for excusable neglect.**

3             Under Rule 60(b)(1), the Court "may relieve a party or its legal representative from a final

4    judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect . . . ."

5    *Fed. R. Civ. P.* 60(b) & (b)(1); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'hip*, 507 U.S.

6    380, 393 (1993); *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000).  A common

7    example of "excusable neglect" is the party or attorney who despite a reasonable and good faith

8    effort, misses a deadline, and who requests relief shortly after it lapses.  *See, e.g.*, *TCI Group Life*

9    *Ins. Plan v. Knoebber*, 244 F.3d 691, 695, 695 n.2 (9th Cir. 2001); *Laurino v. Syringa Gen. Hosp.*,

10   279 F.3d 750, 752 (9th Cir. 2002); *Bateman*, 231 F.3d at 1222-23.  Likewise, courts will commonly

11   find "excusable neglect" where deadlines have been missed due to calendaring errors or a misread

12   rule.  *See, e.g.*, *Pioneer*, 507 U.S. at 382-84, 393-94; *Pincay v. Andrews*, 351 F.3d 947, 948-49 (9th

13   Cir. 2003), *rev'd on reh'g*, 389 F.3d 853, 859-60 (9th Cir. 2004) (en banc); *Marx v. Loral Corp.*, 87

14   F.3d 1049, 1053-54 (9th Cir. 1996).

15            In his Rule 60 Motion, however, plaintiff fails to present any analysis as to which of his

16   actions in this matter allegedly constitute "excusable neglect."  The closest he approaches to an

17   argument in this regard is his claim that the Court issued its February 25, 2005 Order without the

18   benefit of his having taken sufficient discovery, which would have allegedly demonstrated Smith

19   Barney's fraud on him and/or this Court.  Mot. at 25.  Plaintiff fails to direct the Court to any

20   authority which holds that a failure to sufficiently conduct discovery constitutes "excusable

21   neglect."  Moreover, the Ninth Circuit rejected this type of argument in *Casey v. Albertson's Inc.*,

22   362 F.3d 1254, 1259-60 (9th Cir. 2004) (plaintiff located witness after summary judgment).  The

23   Court thus DENIES plaintiff's Motion premised on this argument to the extent it requests relief

24   under Rule 60(b)(1).

25   **III.     Plaintiff is not entitled to relief under Rule 60(b)(2).**

26            Under Rule 60(b)(2), the Court "may relieve a party or its legal representative from a final

27   judgment, order, or proceeding for . . . newly discovered evidence that, with reasonable diligence,

28   could not have been discovered in time to move for a new trial under Rule 59(b) . . . ."  Fed. R. Civ.

3

P. 60(b) & (b)(2).  To prevail under Rule 60(b)(2), "the movant must show the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was 'of such magnitude that production of it earlier would have been likely to change the disposition of the case.' "  *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987)).

Here, plaintiff clearly fails to meet the third requirement.  As discussed below, *all* of plaintiff's alleged "newly discovered evidence" addresses whether the Court should grant relief under Rule 60(b)(3), based on Smith Barney's alleged fraud on plaintiff and/or this Court.  Thus, in order for plaintiff to obtain relief under Rule 60(b)(2), his evidence of fraud must be of sufficient magnitude to "change the disposition of" this matter.  As discussed below, however, plaintiff is not entitled to relief under Rule 60(b)(3).  The Court thus DENIES plaintiff's Motion to the extent it requests relief under Rule 60(b)(2).

**IV.     Plaintiff is not entitled to relief under Rule 60(b)(3).**

Under Rule 60(b)(3), the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . ." Fed. R. Civ. P. 60(b) & (b)(3); *Casey*, 362 F.3d at 1260.  "To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *Casey*, 362 F.3d at 1260 (quoting *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000)). Further, the fraud must " 'not be discoverable by due diligence before or during the proceedings.' " *Casey*, 362 F.3d at 1260 (quoting *Pac. & Arctic Ry. & Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991)).  Plaintiff's burden is thus to show by clear and convincing evidence that the Court's February 25, 2005 Order was obtained through "fraud, misrepresentation, or other misconduct" "not discoverable by due diligence," which "prevented [him] from fully and fairly presenting" his arguments.  Plaintiff attempts to meet his burden by raising a number of allegations.  As discussed below, however, he succeeds on none of them.

**A.     The Court's limited duty on February 25, 2005**

4

Before analyzing plaintiff's alleged evidence of fraud, the Court reviews its narrow duty on February 25, 2005, in confirming the PCX arbitration award.  Under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "the scope of a confirmation proceeding is extremely limited."  *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003).  This is because a court *must confirm an arbitration award*, except:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* §§ 9, 10(a); *Commw. Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 147 n.1 (1968); *Wilson*, 326 F.3d at 1105.[1]

An erroneous misinterpretation or failure to understand or apply the law is insufficient to vacate. *Wilson*, 326 F.3d at 1105.  A court *must* confirm an arbitration award unless an arbitrator violates section 10 or exhibits a manifest disregard for the law or complete irrationality.  *Id.*

On February 25, 2005, the Court considered plaintiff's Motion to Vacate.  In it, he asserts that (1) his arbitration award was invalid under California law due to clerical errors; (2) the statute of limitations had run on his award; (3) his award was based on an illegal contract; (4) arbitrator Citrin lied regarding reading exhibits provided by Smith Barney; (5) the arbitration should have been postponed; (6) he was unlawfully barred from reviewing arbitration transcripts; (7) the panel refused to hear pertinent and material evidence; (8) the panel failed to consider his claims; and (9) arbitrator Murray failed to disclose that: (a) at Merrill Lynch he engaged in the "same unlawful

---

[1]    Under 9 U.S.C. § 10, a court must also vacate where a panel violates 9 U.S.C. § 11, which addresses formal errors such as calculating an award, which errors are not at issue here.

5

activities" at issue in the arbitration; (b) KYL represented in arbitrations Merrill Lynch stockbrokers under his supervision; (c) KYL continues to represent Merrill Lynch stockbrokers in arbitrations; (d) he knew a Smith Barney witness; and (e) he had arbitrated other arbitrations involving Smith Barney. *See* Order at 11-12. The Court found no basis for any of these assertions, and noted that plaintiff provided no supporting evidence for his ninth set of assertions regarding Murray. *See id.* at 6-13.

### B.       The Arbitration Waiver Agreement

Turning to plaintiff's Rule 60 Motion before the Court, he first asserts that Smith Barney obtained the Court's February 25, 2005 Order by making fraudulent statements in its pleadings regarding an Arbitration Waiver Agreement. Attached as Exhibit "C" to a declaration filed by KYL attorney Michele R. Fron, Esq. [Docket No. 9], in support of Smith Barney's Motion to Confirm, is an Arbitration Waiver Agreement (the "Agreement"). Dated July 6, 2003, the Agreement provides that the parties agree to allow PCX to administer the arbitration, notwithstanding any conflicting substantive or procedural California law. Docket No. 260, Ex. "6" at 1. The Agreement's primary purpose is to confirm that the parties are aware that one or more of them are PCX members, which means they could have a "financial interest" in PCX, as defined by California law, which law would bar PCX from administering the arbitration, if not waived by the parties. *See id.*

In the Brief Facts section of its Motion to Confirm, citing to paragraph 17 of Fron's declaration and to Exhibit "C," Smith Barney states that in order for PCX to administer the arbitration, "the parties executed Arbitration Waiver Agreements[.]" Docket No. 8 at 5:11-14. Later, citing to paragraphs 17 and 34 of Fron's declaration and to Exhibit "C," Smith Barney states that the panel members made disclosures as required by PCX's rules, and claims that the parties signed "Acceptance of Waiver of Disclosure Forms[.]" Docket No. 8 at 10:3-6. By doing so, Smith Barney misstates the title of the Arbitration Waiver Agreements. In its analysis, Smith Barney correctly uses the Agreement to show that the parties agreed to be bound by PCX's arbitration award. *Id.* at 14:26-15:3. It does *not*, however, discuss the Agreement when analyzing the arbitrators' disclosures or their alleged partiality during the arbitration. *See id.* at 18-19.

In its reply for its Motion to Confirm [Docket No. 73], Smith Barney claims that arbitrator

Murray made all his required disclosures.  Docket No. 263, Ex. "4" at 8:23-9:2.  Alternatively, however, citing to paragraphs 17 and 34 of Fron's declaration and to Exhibit "C," Smith Barney claims that by signing the "Arbitration Waiver Agreement[,]" plaintiff waived his right to challenge Murray's disclosures, and is thus *estopped* from doing so.  *Id.* at 8:16-22.  Despite using the correct document title, Smith Barney's claim is unsupported and incorrect.

Plaintiff asserts that Smith Barney's use of an incorrect title for the Agreement, and its incorrect estoppel assertion, allowed it to obtain the Court's February 25, 2005 Order through fraud, in violation of Rule 60(b)(3).  R. 60 Mot. at 11-12.  The Court disagrees for two reasons.  First, Smith Barney filed its Motion to Confirm, containing the incorrect document title, on July 27, 2004.  *See* Docket No. 7.  More than five months later, on January 4, 2005, plaintiff filed an amended opposition to the Motion to Confirm [Docket No. 66], which cross-references a *184-page* initial opposition to the Motion to Confirm filed on December 21, 2004 [Docket No. 63].[2]  In neither opposition does plaintiff challenge Smith Barney's use of the incorrect title.  *See* Docket Nos. 63, 66.  On January 14, 2005, Smith Barney filed its reply for its Motion to Confirm, with its incorrect estoppel statement.  Between January 14, 2005 and before the Court's Order on February 25, 2005, plaintiff filed eight pleadings with the Court.[3]  At no time did he request to file a sur-rebuttal to address Smith Barney's estoppel statement.  *See* Civ. L.R. 7-3(d).  Instead plaintiff *waited until ten months after the Order was entered* to raise this issue.  Rule 60(b)(3) does not provide relief, however, *where the alleged fraud is discoverable by due diligence before the proceedings.  Casey*, 362 F.3d at 1260.  By reading Smith Barney's motion and reply, plaintiff should have discovered its

---

[2]    Around the same time in December 2004 that plaintiff filed his first opposition to the Motion to Confirm, the Court disposed of a number of administrative motions, including continuing the hearing on the Motion to Confirm and allowing plaintiff to amend his opposition to the Motion to Confirm.

[3]    January 18, 2005: Motion to Amend/Correct the Record Related to Motion to Confirm [Docket No. 76]; February 1, 2005: Reply Brief in support of Motion to Vacate [Docket No. 81]; Reply Brief in support of Motion for Leave to Amend First Amended Complaint [Docket No. 82]; Objection to Declaration of Michele R. Fron [Docket No. 83]; Objections to Declaration of Michele Fron [Docket No. 84]; February 2, 2005: Amended Reply Memorandum regarding Motion to Vacate [Docket No. 85]; February 8, 2005: Motion to Issue Subpoena as to Counsel for Defendant Smith Barney, Inc. [Docket No. 86], including a declaration and exhibit sets 10 through 12 [Docket Nos. 87-90]; February 9, 2005: Renotice Motion Hearing regarding Motion to Issue Subpoena as to Counsel for Defendant Smith Barney [Docket No. 91].

1   allegedly "fraudulent statements," prior to the Court's February 25, 2005 Order, and taken remedial

2   steps at that time.

3          In addition, plaintiff cannot prove fraud under Rule 60(b)(3), because he cannot show that

4   Smith Barney used these allegedly fraudulent statements to obtain the February 25, 2005 Order.  The

5   Court notes that in the Background section of the Order, it states that due to changes in California

6   law relating to arbitrator disclosures, the parties signed PCX "Arbitration Waiver Agreements,"

7   affirming their desire to arbitrate under the PCX rules.  Order at 2:12-16.  In the same section, the

8   Order also notes that after the arbitrators made the disclosures required under the PCX rules, "the

9   parties signed Acceptance of Waiver of Disclosure forms prior to the hearing.  (Fron Decl., ¶¶ 17,

10  34. and Exh. C.)"  Order at 2:26-3:1.  In its Analysis section, however, the Court uses the

11  document's correct title and correctly notes that when plaintiff signed the PCX "Arbitration Waiver

12  Agreement[,]" he agreed to be bound by the PCX arbitration process.  Order at 6:3-8.  Nowhere else,

13  however, does the Court discuss, mention, or even consider the Agreement.  *See* Order.  Morever,

14  when discussing plaintiff's ninth set of allegations regarding Murray's disclosures, the Court

15  *specifically addresses Smith Barney's reply argument* that Murray made all his required disclosures,

16  *see id.* at 12:10-12 (citing Smith Barney's reply at 8), but never mentions, much less addresses, any

17  estoppel argument, *see id.* at 11-13.  Thus, neither Smith Barney's single incorrect mistitling nor its

18  estoppel statement *had any impact whatsoever on the Court's analysis*.

19         For these two reasons, plaintiff fails to show that Smith Barney used either its mistitling of

20  the Agreement or its incorrect estoppel statement to obtain the February 25, 2005 Order through

21  "fraud, misrepresentation, or other misconduct."[4]  *See Casey*, 362 F.3d at 1260 (quoting *De Saracho*,

22  206 F.3d at 880).  The Court thus DENIES plaintiff's Rule 60 Motion to the extent it seeks relief

23  under Rule 60(b)(3) on this basis.

24         **C.     Arbitrator Disclosures**

25         Plaintiff asserts that Smith Barney obtained the Court's February 25, 2005 Order by making

26  three fraudulent statements in its pleadings regarding whether or not the arbitrators had properly

27  _____

28  [4]     For its part, Smith Barney claims the titling error in its motion was inadvertent, R. 60 Opp'n
    at 7, but never explains how it read Exhibit "C" as supporting an estoppel argument.

1   disclosed any conflicts of interest.  Mot. at 12-23.

2                    **1.     Disclosures under PCX's Rules**

3          In providing background facts in its Motion to Confirm, Smith Barney states that "[a]ll three

4   gentlemen made all disclosures of prior employment history and any other possible conflicts, if any,

5   as required by the [PCX] disclosure rules."  Docket No. 8 at 10:3-5.  PCX Rule 12.11(a) governs

6   disclosures.  It states that an arbitrator must disclose to the PCX's Director of Arbitration "any

7   circumstances which might preclude such arbitrator from rendering an objective and impartial

8   determination[,] including "(1) [a]ny direct or indirect financial or personal interest in the outcome

9   of the arbitration; [and] (2) Any existing or past financial, business, professional, family or social

10  relationships that are likely to affect impartiality or that might reasonably create an appearance of

11  partiality or bias."  Docket No. 267, Ex. "G" at 15.  Arbitrators must also disclose any personal

12  relationships with any party, counsel, witness, or "any such relationship involving members of their

13  families or their current employers, partner, or business associates."  *Id.*  Plaintiff claims that

14  arbitrators Murray and Citrin failed to make proper disclosures.

15                   **a.     Murray's Disclosures**

16         Plaintiff asserts that Murray failed to comply with rule 12.11(a) in three ways.  First, plaintiff

17  asserts that Murray failed to disclose arbitrations in which KYL appeared before him.  *See* R. 60

18  Mot. at 16-23.  Plaintiff, however, fails to indicate where Rule 12.11(a) or the law requires an

19  arbitrator to do this.[5]  As Smith Barney notes, partiality which supports vacating an arbitration award

20  will be shown, where for example, an arbitrator fails to disclose a close significant financial

21  relationship with a party or their involvement in the facts giving rise to the arbitration.  *See* R. 60

22  Opp'n at 12-18; *see Commw. Coatings Corp.*, 393 U.S. at 146-49 (arbitrator failed to disclose

---

24  [5]      In a footnote, plaintiff asserts that appointment to another arbitration panel is per se, a
    relationship an arbitrator must disclose, citing *Ovitz v. Schulman*, 133 Cal.App.4th 830, 35
25  Cal.Rptr.3d 117 (2005).  As Smith Barney notes, however, R. 60 Opp'n at 10 n.8, *Ovitz* addressed
    the application of section 1281.9 of the California Code of Civil Procedure, which as implemented
26  by the Judicial Council after 2001, requires an arbitrator to disclose other current or future
    arbitrations involving the same parties or attorneys before the arbitrator.  133 Cal.App.4th at 838-41.
27  This requirement the court notes, however, *is not found in the law interpreting the FAA.  Id.* at 833,
    838-41, 848-49.  This Court notes that when plaintiff signed the Agreement, he expressly waived the
28  protections of California's procedural law, in favor of PCX's disclosure rules, modeled on law
    interpreting the FAA.  *See* Docket No. 260, Ex. "6" at 1.

1    repeated significant business dealings with party, including work on building project triggering

2    arbitration).  Here, however, plaintiff merely asserts that he was denied the opportunity to challenge

3    Murray's appointment based on *Smith Barney's choice of counsel*.  The Court notes, however, that

4    the repeated appearance of counsel before either a judge or an arbitrator, does not by itself constitute

5    "evident partiality or corruption."[6]  *See Commw. Coatings Corp.*, 393 U.S. at 147 n.1.  Thus,

6    plaintiff fails to show that Smith Barney made any false statements predicated on Murray's alleged

7    failure to disclose KYL's prior appearances before him.

8         Plaintiff also asserts, however, that Murray failed to comply with Rule 12.11(a) by not

9    disclosing arbitrations in which Smith Barney was a party.  *See* R. 60 Mot. at 16-23.  Again,

10   however, plaintiff fails to indicate where Rule 12.11(a) or the law requires an arbitrator to do this,

11   and for the reasons just noted, neither does.[7]  "When the parties agree to arbitration before

12   disinterested persons who have experience in a specialized business or type of problem, the

13   relatively small number of qualified arbitrators may make it common, if not inevitable, that parties

14   will nominate the same arbitrators repeatedly."  *Dow Corning Corp. v. Safety Nat. Cas. Corp.*, 335

15   F.3d 742, 749-50 (8th Cir. 2003) (certain ongoing relationships require disclosure, not prior panel

16   nominations); *see also Int'l Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 551-52 (2d Cir. 1981)

17   (analogizing "New York's maritime-arbitration community to a busy harbor, where the wakes of the

18   members often cross").  Plaintiff thus fails to show that Smith Barney made any false statements

19   predicated on Murray's alleged failure to disclose prior arbitrations involving Smith Barney.

20        Finally, however, plaintiff asserts that Murray failed to disclose that he was an expert witness

21   for Dean Witter Reynolds ("DWR").  R. 60 Mot. at 26.  Plaintiff notes that a letter he received in

---

23   [6]    The Court also notes that Murray's per se "disqualification based on counsel," which would
24   bar a firm from appearing more than once before the same arbitrator, would make arbitration
     unworkable.

25   [7]    As an exhibit to his Motion, plaintiff attached an October 2002 e-mail from the PCX's
     Assistant General Counsel to him.  See Docket No. 260, Ex. "10" at 2-4.  After she notes that
26   Rule 12.11 requires the disclosure of information which "might preclude [an arbitrator] from
     rendering an objective and impartial determination," she agrees to ask the proposed arbitrators to
27   inform her if they "intend to participate in . . . any other arbitrations that might involve the subject
     matter, parties, or attorneys involved in this arbitration.  *As usual*, any *relevant* disclosures will be
28   provided to the parties in this arbitration."  *Id.* at 2 (emphasis added).  She does *not* state, however,
     that she is amending Rule 12.11 to broaden the required disclosures.

May 2002, regarding arbitration panel appointments, states that Murray's was an expert witness for a plaintiff who sued DWR, and that Murray has never been an expert witness for a broker/dealer. Docket No. 261, Ex. "25" at 3.  Plaintiff also notes that in a 1996 PCX arbitrator profile, Murray states that he has prior experience as an expert witness for a "plaintiff in a complaint against a NYSE firm," but also states that he conducted research "for [a] law firm representing DWR in civil litigation pending in Reno[,] Nevada."  Docket No. 263, Ex. "43" at 8.  In response, Smith Barney notes that in a 2002 NASD disclosure profile, filed by plaintiff with his Motion, Murray expressly states that he "[s]erved in the capacity of an expert witness during 1994-1996.  I was called upon to review a broker's alleged misconduct.  I was an expert witness for the plaintiff.  [DWR] was the defendant."  Docket No. 261, Ex. "24" at 8.

The Court notes that the 1996 profile asks the question, "Have you been an expert witness *for* a broker/dealer . . . ?"  Docket No. 263, Ex. "43" at 8 (italics in original).  The "No" box has been checked, but scribbled out.  *See id.*  Likewise, the "Yes" box has been checked, scribbled out, then surrounded by a rough box.  *See id.*  The Court also notes that almost the entire profile is filled out in a very distinctive and precise small-capitals handwriting style.  *See id.* at 1-9.  The *only* exception is the entry regarding representing DWR, which is handwritten in cursive, and which has numerals written in a style unlike that used for any of the other entries.  *See id.* at 9.  Further, this entry is *initialed* with letters which might be "bj," but which are not "JM" or "jm."  *See id.*  This information appears to have been entered by someone other than Murray, but plaintiff fails to explain who or why.  As the moving party, he has the burden to prove fraud by *clear and convincing* evidence.  *Casey*, 362 F.3d at 1260.  On the contradictory evidence before the Court, plaintiff fails to show that Murray (1) was an expert witness for DWR and/or (2) failed to disclose that he was an expert witness for DWR.  Plaintiff thus fails to show that Smith Barney made any false statements predicated on any alleged non-disclosure by Murray, and the Court DENIES his Motion to the extent it seeks relief under Rule 60(b)(3) on this ground.

### b.    Citrin's Disclosures

Plaintiff asserts that arbitrator Citrin failed to disclose his pecuniary interest in plaintiff's arbitration, due to alleged "repeat players" like Smith Barney and KYL, because Citrin made

$18,000 from the arbitration on income of less than $90,000.  R. 60 Mot. at 27.  Plaintiff, however,

cites no PCX rule or legal authority for the proposition that arbitration fees from parties or firms

which employ arbitration more than once may constitute a pecuniary interest requiring disclosure.[8]

Thus, he fails to show that Smith Barney made any false statements predicated on this alleged non-

disclosure.

### 2.    Murray's "Involvement" with KYL and Smith Barney

In his Motion to Vacate, plaintiff asserts (1) that KYL represented in arbitrations Merrill

Lynch stockbrokers under Murray's supervision and (2) that Murray arbitrated other arbitrations

involving Smith Barney.  In its reply for its Motion to Confirm, Smith Barney states that "there is no

evidence that Mr. Murray had any involvement with [KYL] at any time, other than acting as an

impartial arbitrator in another matter . . . ."  Docket No. 73 at 9:3-5.  As a footnote to this statement,

Smith Barney states that "Plaintiff erroneously alleges that Mr. Murray acted as an arbitrator in a

matter where Smith Barney was a party.  There is no evidence of that alleged fact."  *Id.* at 9 n.4.

Plaintiff asserts that these statements were false because (1) Murray has served as an arbitrator in

other arbitrations where Smith Barney was a party; and (2) Smith Barney did not know whether

these statement were true, when it made them.  R. 60 Mot. at 12-23.

Regarding Smith Barney's statement regarding KYL, the evidence shows that it is false, to

the extent it proposes that "there is no evidence that Mr. Murray had any involvement with [KYL] at

any time, other than acting as an impartial arbitrator in *another* matter[.]"  The fact is that prior to

plaintiff's March 22, 2004 arbitration, KYL had appeared before Murray in *multiple* arbitrations.

But significantly, as the Court has already held, the mere fact that KYL appeared previously before

Murray, is not itself subject to disclosure under PCX Rule 12.11(a) or *Commonwealth Coatings*.

Other than this error, plaintiff provides no evidence that Murray had any other "involvement with

[KYL] at any time" which would merit disclosure by Murray.  Thus, plaintiff fails to show that

---

[8]      Further, plaintiff provides no evidence in support of his assertions.  His only source for
Citrin's purported income is hearsay from a letter to a Palo Alto newspaper in 2005 regarding the
cutoff point for Social Security payroll taxes, in which Citrin jokingly implies, without any reference
to any tax year, that unlike President Bush or those who earn more than $90,000 annually, he pays
Social Security tax on all his "income."  Docket No. 261, Ex. "26" at 2.

1   Smith Barney's statement regarding KYL was fraudulent under Rule 60(b)(3).

2          Smith Barney's footnote was misleading, at best.  On the one hand, in his Motion to Vacate,

3   plaintiff brought forth no evidence showing that Murray had acted as an arbitrator in another matter

4   where Smith Barney was a party.  On the other hand, plaintiff argues, uncontested by Smith Barney,

5   that Smith Barney's footnote means that *Smith Barney* had no evidence that Murray acted as an

6   arbitrator in another matter where Smith Barney was a party.  R. 60 Mot. at 16-23.  Plaintiff

7   correctly notes that had KYL checked its records, it would have known that this statement was false.

8   *Id.*  Specifically, in October 2003, Murray signed an award in an NASD arbitration, in which KYL

9   represented Smith Barney as the respondent.[9]  Docket No. 260, Ex. "11."  Plaintiff claims that by

10  withholding this information, Smith Barney obtained the February 25, 2005 Order through

11  fraudulent conduct under Rule 60(b)(3).

12         The Court disagrees with plaintiff's conclusion for two reasons.  First, plaintiff fails to

13  demonstrate how, from his perspective, this footnote allowed Smith Barney to obtain the

14  February 25, 2005 Order by fraud.  In its Order, the Court states that plaintiff "fails to city any

15  evidence, that Murray had been an arbitrator in which Smith Barney had been a party.  Defendant

16  asserts that it is not aware of any evidence suggesting that Murray has arbitrated a matter where

17  Smith Barney was a party.  (Reply, 9.)"  Order at 12:24-13:3.  The Court's ruling, however, did not

18  turn on its second sentence referencing this footnote.  Given the evidence presented, the law is clear

19  that the FAA, which controlled plaintiff's arbitration, does not require an arbitrator to disclose

20  whether any parties have used him or her before as an arbitrator.  *See Dow Corning Corp.*, 335 F.3d

21  at 749-50; *Int'l Produce, Inc.*, 638 F.2d at 551-52.  Thus, plaintiff fails to show that Smith Barney

22  used the misleading footnote to obtain the February 25, 2005 Order by fraud.

23  _____

24  [9]      Plaintiff also notes that Murray was *appointed* to another NASD arbitration in which Smith
Barney was a party, on March 15, 2004.  Mot. at 16.  As Smith Barney notes, however, this initial
25  appointment, of which Murray may not have even known at the time, occurred *during* plaintiff's
arbitration.  *Id.*; R. 60 Opp'n at 9.  *After his arbitration ended* on March 22, 2004, this other NASD
26  arbitration had an April conference call, followed by an arbitration hearing in 2005.  *Id.*  Plaintiff
also asserts that Murray was involved in another Smith Barney arbitration in October 2002, but this
27  was disclosed to PCX prior to plaintiff's arbitration, and it appears to have settled or been dismissed.
*See* R. 60 Mot. at 16; Docket No. 160, Ex. "10" at 5.  KYL has no information regarding this alleged
28  October 2002 arbitration.  R. 60 Opp'n at 17.  Plaintiff thus may not use either the October 2002 or
March 2004 appointments as evidence of any failures by Murray to make required disclosures.

1   Nevertheless, even if the misleading footnote constituted fraudulent conduct, plaintiff fails to

2   show why it was not "discoverable by due diligence before or during the proceedings.' " *Casey*, 362

3   F.3d at 1260 (quoting *Pac. & Arctic Ry. & Navigation Co.*, 952 F.2d at 1148). Plaintiff filed this

4   action in May 2004. *See* Docket No. 1. He filed his Motion to Vacate in October 2004. *See* Docket

5   No. 36. The evidence plaintiff now puts before the Court is evidence which he obtained from a

6   publicly accessible NASD website. Docket No. 260 ¶¶ 26-30. Plaintiff claims that this arbitration

7   information was not available on the NASD's website until he filed his first Rule 60(b) Motion in

8   November 2005. *See id.* The Court notes, however, that he received a letter from the PCX in *May*

9   *2002*, regarding arbitration panel appointments, which clearly states that Murray is an arbitrator for

10  the PCX, the NASD, and the NYSE. *See* Docket No. 261, Ex. "25" at 3. He does not explain,

11  however, why he did not contact the NASD or the NYSE in the five months prior to filing his

12  Motion to Vacate,[10] before alleging *without support* that Smith Barney had previously appeared

13  before Murray. Plaintiff thus failed to exercise due diligence prior to filing his Motion to Vacate.

14  As such, he may not now assert that Smith Barney's misleading footnote was the "conduct" which

15  prevented him "from fully and fairly presenting" his arguments regarding Smith Barney's prior

16  appearance before Murray. *See Casey*, 362 F.3d at 1260 (quoting *De Saracho*, 206 F.3d at 880).

17  The Court thus DENIES plaintiff's Motion to the extent it seeks relief under Rule 60(b)(3) based on

18  Smith Barney's statement regarding KYL or its misleading footnote.

19          **D.     Plaintiff's Failure to State a Cause of Action**

20          Plaintiff correctly notes that the clause in the Order regarding his arbitration's disposition,

21  which reads, "[a]ll claims of Plaintiff were dismissed for failure to state a cause of action[,]" should

22  instead state that he did not meet his burden of proof. R. 60 Mot. at 13-14; Docket No. 260, Ex. "2"

23  at 6. Smith Barney used this language in its Motion to Confirm. Docket No. 8 at 10:22-23. Plaintiff

24  waived this argument, however, by failing to raise it in his opposition to Smith Barney's Motion to

25

26  ───────────────

27  [10]     Plaintiff asserts that as a non-lawyer, he did not know where to find evidence. Docket
    No. 260 ¶ 27. Plaintiff, however, chose to file this suit, and in propria persona plaintiffs are required
    to take reasonable steps to prosecute their matters. Civil L.R. 3-9(a). Plaintiff's discovery

28  difficulties do not support a fraud argument, but do relate to one for excusable neglect which the
    Court has already rejected. *See Casey*, 362 F.3d at 1259-60.

Confirm.  *See Casey*, 362 F.3d at 1260 (fraud must not be discoverable by due diligence before or during the proceedings).  Further, he fails to explain how the nature of his loss at arbitration played *any role* in the Court's analysis in its February 25, 2005 Order.  *See Casey*, 362 F.3d at 1260 (order must be *obtained* through fraud).  Nor may he do so, however, as the Court only mentions his disposition in the Order's Background section, *see* Order at 3:4-5, and as it played *absolutely no role* in the Court's analysis.  The Court thus DENIES plaintiff's Motion to the extent it seeks relief under Rule 60(b)(3) based on Smith Barney's misstatement of his arbitration disposition.

**V.      Plaintiff is not entitled to relief under Rule 60(b)(6).**

As the Ninth Circuit has held:

> The Rule 60(b)(6) "catch-all" provision, on which appellants rely, applies only when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60.  *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 n. 8 (9th Cir. 2002). "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice" and "is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment."  *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).  A party seeking to re-open a case under Rule 60(b)(6) "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion."  *Cmty. Dental*, 282 F.3d at 1168.

*Delay*, 475 F.3d at 1044.

Plaintiff does not expressly identify any specific request for relief under Rule 60(b)(6).  Nonetheless, at the end of his Rule 60 Motion are three miscellaneous requests which do not appear to fall under *any* categories of Rule 60(b).  First, plaintiff asserts that his contribution arbitration award violates sections 1432 and 877 of the California Civil Code.  R. 60 Mot. at 28.  Section 1432 provides that "[e]xcept as provided in Section 877 . . . a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him."  Section 877 provides a process by which parties

15

1  may challenge a settlement by less than all the parties to a matter, to prevent the settling parties from

2  later raising their good-faith settlement as a barrier to contribution requests.  Plaintiff does not

3  explain how these state civil litigation statutes apply to his PCX federal arbitration.  Plaintiff also

4  fails to explain why he did not raise this issue in his Motion to Vacate.  A Rule 60(b) motion is not

5  an opportunity to add new arguments simply because they are new.  As plaintiff has not shown

6  "injury and circumstances beyond his control" which prevented him from earlier raising these

7  issues, *see Pioneer Inv. Servs. Co.*, 507 U.S. at 393, the Court DENIES his request for relief under

8  Rule 60(b)(6).

9        Plaintiff also asserts that it is illegal to require him to pay arbitration fees under

10  *Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal.4th 83, 6 P.3d 669 (2000).  R. 60

11  Mot. at 28.  *Armendariz* construes the application of section 1284.2 of the California Code of Civil

12  Procedure, which mandates pro-rata arbitration fee sharing by parties, *unless their agreement*

13  *provides otherwise*.  24 Cal.4th at 107, 112; *see* Cal. Civ. Code § 1284.2.  Consistent with the

14  express provisions of this section, plaintiff waived this right in the Agreement, in favor of the PCX

15  Rules.  Further, plaintiff neither explains why he failed to raise this issue in his Motion to Vacate,

16  nor what "extraordinary circumstances" prevented him from doing so in a timely fashion, and

17  therefore, entitle him to raise it under Rule 60(b)(6).

18        Finally, plaintiff claims that "[a]lthough mandated by PCX, missing from [the] April 29,

19  2004 award and June 29, 2004 award are: (1) the date the claim was filed; and (2) the numbers and

20  dates of hearing sessions."  R. 60 Mot. at 28 (italics and footnote omitted).  Plaintiff does not

21  provide the Court with the PCX or other authority which mandates that this information be provided

22  in his awards.  Nor does he provide any evidence that this information is in fact missing from his

23  awards.  Assuming it is, he fails to explain why he failed to raise this issue, based on an alleged

24  defect *visible on the plain face of his awards*, in his October 2004 Motion to Vacate.  Nor does he

25  explain what "extraordinary circumstances" entitle him to raise this issue at this time, much less

26  obtain relief for it, under Rule 60(b)(6).  The Court thus DENIES his request for relief under Rule

27  60(b)(6).

28  ///

16

1  ///

2  ///

3

4                                **CONCLUSION**

5         ACCORDINGLY, the Court DENIES plaintiff Sathianathan's Renewed Rule 60 Motion for

6  Relief from this Court's February 25, 2005 Order [Docket No. 257].

7

8         IT IS SO ORDERED.

9

10  March 2, 2009                          _____
                                           Saundra Brown Armstrong
11                                         United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          17

1

2

3

4   UNITED STATES DISTRICT COURT
    FOR THE
5   NORTHERN DISTRICT OF CALIFORNIA

6   SATHIANATHAN,
                                              Case Number: CV04-02130 SBA
7              Plaintiff,
                                          **CERTIFICATE OF SERVICE**
8     v.

9   SMITH BARNEY, INC. et al,

10             Defendant.
    _____/

11

12  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.
13
    That on March 3, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said
14  copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
    envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
15  located in the Clerk's office.

16

17

18  Raghavan Sathianathan
    c/o S. T. Allen & Co.
19  336 Bloomfield Avenue
    Montclair, NJ 07042
20

21  Dated: March 3, 2009
                                          Richard W. Wieking, Clerk
22                                        By: LISA R CLARK, Deputy Clerk

23

24

25

26

27

28

                                              18